IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES T. BAKER, | ) | CASE NO. 1:10-CV-1479 |
|           Plaintiff, | ) ) ) | |
| v. | ) ) | MAGISTRATE JUDGE McHARGH |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) ) | |
|           Defendant. | ) ) | **MEMORANDUM OPINION** |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 13). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff James Baker's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court REVERSES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

## I. INTRODUCTION & PROCEDURAL HISTORY

On January 5, 2007, James Baker ("Plaintiff" or "Baker") protectively filed applications for a Period of Disability and Disability Insurance benefits and Supplemental Security Income alleging that he became disabled on August 23, 2002. (Tr. 115-16, 122-24). Baker's applications for benefits were denied initially and upon reconsideration. (Tr. 60-63). He timely requested and was granted an

administrative hearing. (Tr. 88-90).

On March 6, 2009, Administrative Law Judge Addison C. S. Masengill ("ALJ Masengill" or the "ALJ") conducted a hearing via video conference. Plaintiff, represented by counsel, and vocational expert, Maurice Demaris (the "VE") both testified at the proceeding. (Tr. 34-57). ALJ Masengill and the VE appeared in Springfield, Massachusetts, and Plaintiff and his counsel appeared in Mansfield, Ohio. (Tr. 26, 36). On March 27, 2009, ALJ Masengill issued a written decision denying Plaintiff's applications for benefits. (Tr. 26-33). The ALJ's decision explained how he applied the five-step sequential evaluation,[1] and concluded that Plaintiff was not disabled. *Id.* Subsequently, Baker requested review of the ALJ's decision from the Appeals Council. (Tr. 22). However, on May 27, 2010, the Appeals Council denied Baker's request, thereby making the ALJ's decision the final

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

decision of the Commissioner. (Tr. 1-4). Plaintiff now seeks review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[2]

Plaintiff, born on August 11, 1957, was forty-seven years old on his alleged onset date, and considered as a younger person for Social Security purposes. (Tr. 171); 20 C.F.R. §§ 404.1563(c), 416.963(c). Subsequently, upon turning fifty years old during the pendency of his appeal, Plaintiff changed age categories and is now considered as a person closely approaching advanced age. 20 C.F.R. §§ 404.1563(d), 416.963(d). Baker has a twelfth grade education and prior experience working as a heating and air conditioning installer/servicer. (Tr. 38-39, 54). His date last insured for Disability Insurance benefits was June 30, 2007. (Tr. 171).

## II. MEDICAL EVIDENCE[3]

In December 2005, Baker underwent testing of his pulmonary function at Mansfield Hospital. (Tr. 235-38). The results showed that Plaintiff had moderate airflow obstruction and moderate hyperinflation in his lungs. (Tr. 236). Later, in May 2006 Plaintiff presented to physicians at Third Street Family Health Services ("TSFHS") complaining of a chest cold. (Tr. 218). Doctors there prescribed him Albuterol. *Id.*

Also in May 2006, Plaintiff began treatment for his left knee with Dr. Jay Guth, an orthopedic surgeon. (Tr.345). Baker told Dr. Guth that he had experienced problems with his knee, including pain and swelling, for the previous 20 years. *Id.* Upon examination, Dr. Guth diagnosed Plaintiff with arthritis in his left knee, primarily in his patella femoral, and injected medication into the area. *Id.*

---

[2] Plaintiff later reapplied for benefits and was found disabled as of April 2009, the month after ALJ Masengill issued his decision. (*See* Tr. 6-11).

[3] Both parties have thoroughly addressed the pertinent medical evidence in their briefs filed with the Court. The following recital of the medical evidence discusses only the evidence upon which the Court deemed essential in making its determination. It is not intended to reflect Baker's entire medical record.

Plaintiff next presented to Dr. Guth in July 2006 again complaining of problems with his left knee after performing work which required him to crawl on his hands and knees. *Id.* Dr. Guth was unable to perform magnetic resonance imaging ("MRI") testing on Baker due to Baker's insufficient medical insurance coverage, but the doctor recommended anti-imflammatories for Baker and gave him a prescription for Vicodin. *Id.* In August 2006, Baker presented to Dr. Guth regarding further swelling and pain in his knee. *Id.* Dr. Guth noted that the symptoms were activity related. *Id.* Dr. Guth informed Plaintiff that he could proceed with arthroscopic debridement surgery in his knee, but that he [Dr. Guth] did not feel that Plaintiff needed a total knee replacement. *Id.*

Baker went back to the physicians at TSFHS in October 2006. (Tr. 216). During the visit, Plaintiff was diagnosed with asthma and strongly advised to stop smoking. *Id.* On Baker's following appointment with TSFHS in January 2007, doctors noted that he suffered from shortness of breath, chronic obstructive pulmonary disease ("COPD") and asthma. (Tr. 212). Plaintiff presented to TSFHS again one month later, at which time he was diagnosed with acute bronchitis. (Tr. 249).

On March 19, 2007, Dr. Sushil Sethi, performed a consultative examination of Plaintiff regarding his COPD, arthritis and swelling in his legs. (Tr. 259-61). Baker admitted to smoking between one and two packs of cigarettes a day. (Tr. 259-60). Dr. Sethi opined that Baker suffered from severe obstructive pulmonary disease, tobacco abuse, and chronic arthritic complaints in his knees. (Tr. 261). However, Dr. Sethi noted that Plaintiff's COPD showed excellent improvement with the use of bronchodilators. Ultimately, the doctor concluded that Plaintiff's impairments placed a moderate limitation on Baker's ability to sit, stand, walk, lift, carry and handle objects. *Id.*

Later in March 2007, state agency physician, Dr. Anton Freihofner, reviewed Plaintiff's file and completed a residual functional capacity ("RFC") assessment of Baker's physical abilities. (Tr. 275-82). Dr. Freihofner opined that Baker retained the RFC to lift and carry up to 50 pounds

4

occasionally and 25 pounds frequently. (Tr. 276). He also remarked that Plaintiff could stand, walk and sit for about six hours each workday. *Id.* The report indicated that Dr. Freihofner reviewed Dr. Guth's notes about Baker's knee prior to completing this assessment. Although Dr. Freihofner found that Baker's statements were consistent with the medical evidence, he noted that Baker's statements regarding the severity of his symptoms were not consistent with the record. (Tr. 280).

In May 2007, Plaintiff's treating physician, Dr. Guth, completed a form for the Ohio Department of Job and Family Services ("ODJFS"). In the report, Dr. Guth opined that Baker could "work with no restrictions." (Tr. 311). Dr. Guth issued this opinion in May 2007, but the form itself shows that Dr. Guth had not seen Plaintiff since August 21, 2006. Therefore, although Dr. Guth's opinion was dated in 2007, his opinion was based on his records from 2006.

In June 2007, Plaintiff's file was examined by two physicians who offered opinions conflicting with Dr. Guth's findings given to the ODJFS. First, consultative examiner, Dr. Mei-Chiew Lai, examined Plaintiff on June 1, 2007. (Tr. 316-19, 331-37). Dr. Lai indicated that Baker could lift no more than 20 pounds, and could stand, walk or sit for no more than a total of four hours in an eight hour workday, in 30 minute intervals. (Tr. 314). Additionally, Dr. Lai commented that Plaintiff required a sit/stand option, and could rarely or never climb, balance, stoop, crouch, kneel or crawl. (Tr. 315). Notably, Dr. Lai remarked that he did not expect Baker to return to work "even though he may be able to perform [a] part-time job, three to four hours a day, four to five days a week" due to psychological factors. (Tr. 334). Accordingly, Dr. Lai noted that Baker was unemployable, in his opinion. *Id.*

Second, Dr. Elizabeth Das, a state agency physician, also reviewed Plaintiff's medical file in June 2007. (Tr. 323-330). In her RFC assessment, Dr. Das opined that Baker was limited to lifting and carrying 20 pounds occasionally, and 10 pounds frequently. (Tr. 324). But, Dr. Das noted that

Plaintiff could sit, stand or walk for six hours in a normal workday. *Id.* In further contrast to Dr. Lai's conclusions, Dr. Das found that Plaintiff could frequently engage in work involving stooping, crouching and crawling. (Tr. 325). Dr. Das's report also revealed that Dr. Das did not review any statements from Baker's treating or examining sources prior to rendering her opinion. (Tr. 329).

When Plaintiff returned to see Dr. Guth in August 2007, Dr. Guth noted that Plaintiff's pain had increased "to the point where he [wa]s unable to work." (Tr. 344, 355). Additionally, the doctor commented that Baker's x-rays showed moderate arthritic changes in Plaintiff's left knee. Dr. Guth recommended that Plaintiff undergo a scope of his knee to "clean up" the arthritic changes and to delay or eliminate Baker's need for total knee replacement surgery. *Id.* Also in August 2007, treatment notes from Dr. H. Oni, a physician with TSFHS, reflected that Plaintiff's asthma/COPD was stable. (Tr. 340-41). But, just months later, Dr. Oni drafted a note stating that Plaintiff's COPD was now moderate to severe and that he should not overexert himself. (Tr. 354).

Later, in April 2008, Plaintiff underwent arthroscopic surgery of his left knee by Dr. Michael Viau. (Tr. 355, 381). Following the surgery, Dr. Viau noted that Baker experienced expected pain, and that he may still require total knee replacement.[4] Dr. Viau's final treatment note from December 2008 stated that Plaintiff was still symptomatic. (Tr. 369). Dr. Viau also commented that Plaintiff was waiting for Social Security in order to pursue total knee replacement surgery, and that neither cortisone

---

[4]Both the Commissioner and the ALJ ascribe this treatment note and the latter treatment notes appearing below Dr. Guth's notes on the document as being penned by Dr. Guth. (Def.'s Br. at 4; Tr. 31). However, it appears that this note and respective notes following it on page 369 of the transcript are attributable to Dr. M.R. Viau, the surgeon who performed Plaintiff's arthroscopy of his knee. (*See* Tr. 369). The treatment notes from 2006 and 2007 (Tr. 195, 313, 344-45, 355) all have the letters "JJG" following them, presumably signifying the initials of Dr. Jay J. Guth; on the other hand, the treatment notes from 2008 are followed by the letters "MRV", presumably signifying the initials of Plaintiff's surgeon, Dr. Michael R. Viau (Tr. 355, 369, 381).

6

injections nor pain medication was helping manage Plaintiff's pain.

### III. ALJ'S DECISION

After completing a review of the record, ALJ Masengill determined that Baker was not disabled under the Social Security regulations. (Tr. 26-33). At step one of the sequential evaluation analysis, the ALJ found that Baker had not engaged in substantial gainful activity since his alleged onset date of January 1, 2005. (Tr. 28). At step two, ALJ Masengill ruled that Plaintiff suffered from the following severe impairments: back pain, left leg pain and COPD. *Id*. Yet, at step three, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Before moving to step four, the ALJ found that Baker retained the RFC to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 29). ALJ Masengill noted that Plaintiff had the following limitations: 1) Baker could only occasionally climb ramps and stairs, stoop, crawl, crouch and kneel; 2) he could not perform any overhead lifting or reaching, or use any leg or foot controls; and 3) Baker had to avoid exposure to extreme temperatures, fumes, dusts and gases. *Id.* At step four, the ALJ found that Plaintiff was unable to return to his past work performing heating, ventilation and air conditioning services because the physical requirements of the job exceeded Baker's RFC. (Tr. 32). However, at step five, ALJ Masengill concluded that Plaintiff's RFC permitted him to perform other work which existed in significant numbers in the national economy. (Tr. 32-33). Namely, Plaintiff could work as an inventory clerk, assembler, or as a security guard. *Id.*

### IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful

7

employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Baker asserts two assignments of error against the ALJ's decision. First, Plaintiff avers that the ALJ's RFC finding was not supported by substantial evidence. Second, Baker submits that had the ALJ properly determined his RFC, Medical-Vocational Rule 201.14 would have directed the ALJ to find him disabled.

### A. Plaintiff's RFC

Plaintiff attacks the ALJ's RFC finding on three grounds. To begin, Baker alleges that the ALJ failed to assign proper weight to the opinions of Plaintiff's treating and examining physicians. Specifically, the opinions offered by Drs. Guth, Oni and Lai. Next, Baker contends that ALJ Masengill failed to properly consider the combined effect of all of Plaintiff's impairments in determining whether they rendered him disabled. Lastly, Plaintiff argues that the ALJ improperly discredited his testimony.

#### 1. Medical Opinion Evidence.

It is well-established that the ALJ must consider all the medical opinion evidence appearing in the claimant's file. *Walton v. Comm'r of Soc. Sec.*, 187 F.3d 639 (6th Cir. 1999) (Table); 20 C.F.R. §§ 404.1527; 416.927. Moreover, the ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The so-called "treating source doctrine" recognizes that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544.

Even when a treating physician's opinion is not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Id.* These factors include: the length of the treatment relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6); 416.927(d)(2)-(6). The regulations also require the ALJ to provide "good reasons" for the weight he/she ultimately assigns to the treating source's opinions. *Id.*

The Sixth Circuit announced that the good reasons requirement serves a two-fold purpose. First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted). Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* at 243. Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to a treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011) (*quoting Wilson*, 378 F.3d at 543-46).

In addition to the treating source doctrine, the Social Security regulations also distinguish between the opinions of a nontreating but examining source, and those from a nontreating, nonexamining source. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (2010) ("A 'nontreating

10

source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' him. . . . A 'nonexamining source' is 'a physician, psychologist, or other acceptable medical source who has not examined the claimant but provides a medical or other opinion in the claimant's case.'") (*quoting Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007)). Generally, the ALJ will give more weight to the findings of a nontreating examining source, than to those of a nontreating, nonexamining source. *Id*. at 514. But, the ALJ is not required to give any special deference to the opinions of a physician who has only examined the claimant one time. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). And, an ALJ is not prohibited from adopting the findings of nonexamining source over those of a nontreating source. *See Ealy*, 594 F.3d at 515.

The Court agrees with Plaintiff that the ALJ's decision should be remanded because the ALJ completely failed to explain how he weighed the medical opinion evidence in the record when calculating Plaintiff's RFC. Although the ALJ's opinion contains a lengthy recital of Plaintiff's medical treatment over the relevant time period, the decision is devoid of any discussion regarding how the ALJ evaluated the various medical opinions. Such omissions are detrimental because they preclude the Court from being able to conduct adequate judicial review. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011) ("It is not this Court's role, or even the district court's role, to scour the record for evidence and expert reasoning which the ALJ *might* have relied on and which *could* support a finding of no-disability *if* the ALJ actually considered it.") (emphasis in original).

With regard to opinions of Plaintiff's treating physician, Dr. Guth, he originally viewed Plaintiff's knee problems as arthritis which was related to Plaintiff's activities. He advised Plaintiff to monitor his activities and gave him pain medication. Based upon this view of Plaintiff's ailment, Dr. Guth informed the ODJFS that Plaintiff had no restrictions on his ability to work. But, after issuing

11

this opinion to the ODJFS, Dr. Guth later commented in his treatment note from August 24, 2007, that Baker "had increasing pain in the knee [which] ha[d] gotten to the point where he [was] unable to work." (Tr. 344). While it is not clear whether Dr. Guth was making this statement based upon his objective opinion, or merely based upon Plaintiff's subjective statements, Plaintiff is correct that Dr. Guth's subsequent note contradicted the doctor's prior statement that Plaintiff could work with no restrictions.

It was particularly important for the ALJ to explain his reasons for crediting or discrediting the various medical opinions in the record, given the unique facts of this case. Pursuant to the treating physician rule, ALJ Masengill was required to assign controlling weight to Dr. Guth's opinions if they were well supported and didn't contradict other evidence in the record. Undoubtedly, the ALJ did not assign controlling weight to Dr. Guth's statement to the ODJFS because the ALJ imposed restrictions on Plaintiff's ability to work by limiting Plaintiff to light work. Likewise, it is also apparent that ALJ Masengill did not give complete deference to Dr. Guth's subsequent treatment note which indicated that the pain in Plaintiff's leg had significantly progressed to the extent that it prevented Plaintiff from working as the ALJ concluded that Baker was capable of performing light work.

Even if Dr. Guth's opinions were not entitled to controlling weight, ALJ Masengill still bore the responsibility of determining how much weight to assign to Dr. Guth's findings and adequately explaining the basis for such determination in his decision. Because ALJ Masengill's decision failed to include a discussion of how he evaluated the medical opinion evidence, it is impossible for the Court to know what weight he assigned to Dr. Guth's opinion issued to the ODJFS versus the weight he gave to Dr. Guth's later findings showing that Plaintiff's condition had further deteriorated, or why the ALJ acted as he did. In the instant case, it is not apparent to the Court how ALJ Masengill interpreted the sum of Dr. Guth's treatment notes.

Contrary to Defendant's argument, the ALJ's failure to label the amount of weight he assigned to Dr. Guth's opinions was not harmless. This is not a situation wherein the ALJ's decision reflects that he understood the purpose of the treating source rule, despite failing to strictly adhere to the regulatory framework. *Compare* [Hickey-Haynes v. Barnhart, 116 F. App'x 718, 725 (6th Cir. 2004)](#) ("The ALJ did not label the amount of weight given to each treating physician's view or list the factors in 20 C.F.R. § 404.1527(d) to explain that conclusion, but her decision shows familiarity with the regulatory framework by emphasizing that Bashir is a specialist who treated Hickey Haynes for a long period of time. Even assuming, for the sake of argument, that the ALJ did not technically meet the procedural requirement to give 'good reasons,' this was harmless error; the reasoning behind her use of each physician's opinion is clear.") *with* [Karger, 414 F. App'x at 752-55](#) ("The harmless-error doctrine cannot be stretched far enough to excuse the ALJ's failure to meaningfully indicate, even indirectly, how much weight he accorded the two treating sources vis-a-vis each other, vis-a-vis the numerous non-treating sources, and *why*.") (emphasis in original). Instead, in the case *sub judice*, there is no insight, direct or indirect, from the ALJ illustrating how he resolved the inconsistency between Dr. Guth's statement to the ODJFS and his subsequent treatment notes. Neither is there any indication of how the ALJ reconciled the conflicts between Dr. Guth's opinions and the conflicting opinions offered by the two state agency physicians and the physicians who examined Plaintiff. Although Dr. Guth's latter treatment note reflecting that Baker's pain prevented him from working is somewhat ambiguous, the ALJ was not at liberty to simply ignore this comment. Because Dr. Guth was Baker's treating physician, it was incumbent upon the ALJ to explain how he weighed Dr. Guth's findings.

Baker argues that the record demonstrates that he is only capable of performing to sedentary work. For example, Plaintiff notes that Dr. Lai's finding that Plaintiff's ability to stand, walk and sit was limited to a total of four hours in an eight-hour workday reflected that Plaintiff was only able to

13

perform the equivalent of sedentary work.[5] Likewise, Plaintiff submits that Dr. Oni's note, describing Baker's COPD as moderate to severe and indicating that Baker should not overexert himself, further demonstrated that the ALJ should have limited him to sedentary work. Defendant submits that ALJ Masengill had no duty to explain the weight he attributed to either of these opinions because Dr. Lai did not constitute as a treating physician, and Dr. Oni did not offer any opinion regarding Plaintiff's functional capacity. Although the Commissioner offers valid reasons which could have supported the ALJ's decision to discount these opinions, these are impermissible post hoc rationalizations. *See S.E.C. v. Chenery Corp*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

Additionally, the ALJ failed to explain what weight he assigned to the opinions of the two state agency physicians, Drs. Freihofner and Das, who reviewed Plaintiff's file and the consultative examiner, Dr. Sethi, who examined Baker. Dr. Freihofner opined that Baker was capable of performing medium work; in contrast, just three months later, Dr. Das found that Plaintiff could only perform light work, whereas Dr. Sethi indicated that Plaintiff's ability to sit, stand, walk, lift, carry, and handle objects was moderately limited. While this omission was less harmful to Baker, what effect these doctors' opinions had on the ALJ's consideration of Dr. Guth's opinion and why is potentially relevant.

The undersigned is also troubled by the ALJ's total disregard for providing any explanation of his interpretation of the medical opinion evidence, particularly because there is little evidence addressing the condition of Plaintiff's left knee after his surgery aside from follow up notes from his surgeon. Considering that Plaintiff's surgeon acknowledged his potential need for total knee

---

[5]Social Security Ruling 83-10 explains that the full range "light work" requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Because Dr. Lai restricted Baker to only four hours of standing or walking, Plaintiff argues that Dr. Lai essentially limited him to sedentary work.

replacement and that the arthroscopy surgery did not relieve Plaintiff's pain and swelling, it is not clear what impact, if any, this evidence had on the ALJ's RFC finding. Seeing as though Plaintiff's knee impairment constituted a substantial portion of the basis upon which Plaintiff sought disability benefits, it may have been beneficial for the ALJ to seek the testimony of a medical expert to determine the extent of Plaintiff's limitation in his knee.

2. Combined Impairments

The Sixth Circuit recognizes that "[d]isability may be established by a claimant suffering from a variety of medical problems no one of which might be sufficiently disabling to prevent substantial gainful employment, but when taken together have that result." *Mowery v. Heckler*, 771 F.2d 966, 971 (6th Cir. 1985) (*citing Hurst v. Schweiker*, 725 F.2d 53 (6th Cir. 1984) and *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980)). Plaintiff maintains that the ALJ failed to consider the combined effect of all his impairments. The Court notes, as Defendant stated in its brief, that Plaintiff's argument on this issue did nothing more that restate the findings contained within the treatment notes provided by his physicians. Baker made no attempt to illustrate how the combination of his impairments rendered him disabled, and the Court is under not duty to create arguments for Plaintiff. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Nevertheless, because the case is being remanded on other grounds and the ALJ failed to explain the reasoning for his decision at step three of the sequential evaluation analysis in his written opinion, the Court urges the ALJ to offer some commentary regarding why the sum of Plaintiff's impairments failed to meet or equal a listing, should the ALJ reach such a conclusion again on remand.

15

### 3. Plaintiff's Credibility

Plaintiff also asserts that ALJ Masengill's RFC was flawed because the ALJ improperly assessed Plaintiff's credibility. Credibility determinations are the prerogative of the ALJ. But, the ALJ's written decision "must contain specific reasons for the finding on [Plaintiff's] credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ may reasonably discount the claimant's testimony when he finds contradictions between the claimant's testimony and the medical evidence. *Id*.

Here, ALJ Masengill found that Baker's statements regarding the severity of his pain were only partially credible. The ALJ listed several reasons for discounting Plaintiff's claims. First, he explained that Baker's complaints of back pain and depression were not entirely credible because Plaintiff never received any formal treatment for these ailments. Turning to Baker's knee problems, ALJ Masengill noted that Plaintiff's ability to maintain a "relatively full range of daily activities" undermined his allegations of disabling pain. For example, the ALJ highlighted that Plaintiff was still able to perform various household chores, use a riding lawnmower, and occasionally play golf.

Although Baker contests the ALJ's depiction of his abilities, the undersigned finds that the record supports the ALJ's conclusions. During his examination with Dr. Lai, Baker indicated that with the help of his girlfriend, he was able to do simple household chores, such as laundry and vacuuming. Additionally, Dr. Lai's notes state, "[u]sually, the patient is doing his own cooking and dishes, [and] mow[ing] the yard by [using] the riding mower." (Tr. 317). Therefore, the record supports ALJ

Masengill's finding that Plaintiff could perform these activities, albeit with assistance at times. Furthermore, during the hearing, Plaintiff testified that he played golf five or six times the previous year. Though Baker indicated that he had to ride a golf cart instead of walking the course, the fact remains that he was able to golf. Accordingly, the reasons cited by the ALJ for discounting Plaintiff's credibility are substantiated by the record. However, because the ALJ will have a second chance to review the record and Plaintiff's credibility, it would be useful for the ALJ to better explain how Plaintiff's ability to perform these tasks invalidated his claim of disabling pain. For instance, it is not apparent to the Court how Baker's use of a riding lawnmower necessarily weakened his claim of disabling pain in his knees. Thus, on remand the ALJ should clarify how Plaintiff's range of daily activities undercut the validity of his testimony regarding the severity of his impairments.

### B. Medical-Vocational Rule 201.14

Baker's final challenge to ALJ Masengill's decision is quite a long-shot. He argues that ALJ Masengill should have found that he was disabled pursuant to Rule 201.14 of the Medical-Vocational Guidelines. This rule directs an ALJ to find a claimant disabled when the claimant 1) falls within the age category of a person "closely approaching advanced age"; 2) has at least a twelfth grade education, which does not provide direct entry into skilled work; and 3) is limited to sedentary work. *See* 20 C.F.R., Part. 404, Subpart P, App. 2, Tables 1-3 (Rule 201-14); *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 776 (6th Cir. 1987). Although Baker did not turn 50 years old until 42 days after his date last insured, he submits that had the ALJ properly determined that he was limited to sedentary work, and had the ALJ properly decided not to strictly adhere to the age categories–given that he was very close to turning 50 on his date last insured, the Medical-Vocational guidelines would have mandated a finding of disabled. Defendant did not respond to this argument in its brief.

17

It is not expedient for the undersigned to entertain Plaintiff's speculative theories at this time. The ALJ did not find that Plaintiff only retained the physical capacity to perform sedentary work. And, should the ALJ make such a finding on remand, there is still the issue of Plaintiff's age as of his date last insured.  While Plaintiff has identified case law permitting an ALJ to make exceptions to the age cut-off points of the various age categories in borderline situations, Plaintiff has not pointed to any case law forbidding the ALJ from strictly adhering to these guidelines.  In other words, even if ALJ Masengill finds that Baker is limited to sedentary work on remand, it is not absolute that the ALJ will also find that Baker falls into one of the "borderline" situations, thus persuading the ALJ to find that Baker is disabled pursuant to Medical-Vocational Rule 201.14.  Consequently, the undersigned rejects Plaintiff's argument on this issue.  On remand, should ALJ Masengill limit Baker to sedentary work, the question of what age category Plaintiff fell within as of his date last insured will be a question left to the discretion of the ALJ.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge **REVERSES** and **REMANDS** the decision of the Commissioner to the Social Security Administration for further proceedings not inconsistent with this opinion.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: October 24, 2011.